Good morning, Your Honors. Matt Larson of the Federal Defender's Office for Mr. Clark. Your Honors, there are two grounds for sending this case back to the District Court for merits review. The first is that Mr. Clark's petition was timely filed under the doctrine of statutory tolling. The second ground is that even if it wasn't timely under that doctrine, Mr. Clark has made an adequate showing of innocence to excuse his late filing. Unless the Court has a preference, I'll begin by addressing statutory tolling. Well, I'd like to ask you about actual innocence. I have one question. Maybe after that, you'd do it whichever way you want. But what do you do about the trial judge's factual finding that the witness told the truth the first time? I think that finding is not entitled to a presumption of correctness, given the record here. I think the record of the hearing, where the judge made that finding, demonstrates that the judge was not functioning as a judge. He was not functioning as an unbiased seeker of truth. He was, in essence, functioning as a prosecutor who says, I know you're coming in here now telling me that you lied at trial, but if you adhere to that position, I'm going to send you to jail. So basically what I want to hear from you is, I didn't lie at trial. Everything is fine. The judgment will stand and will deny this petition. The record reflects that, as I say. Do me a favor. I didn't hear what Judge Reinhardt's question was. I didn't get my hearing aids up. Certainly. So let's start from the beginning. Certainly. What did he ask you? Judge Reinhardt asked, what do we do about the finding made by the Superior Court judge? This is Judge Krug. When Mr. Clark came in on a habeas petition in California Superior Court, that's when he had the first declaration from Mr. Thomas. Okay. And he said, so what do we do about the finding? You know, Judge Krug said at the end of the hearing, okay, I've heard Mr. Thomas' testimony now on the stand, and I find that his trial testimony was credible, and his testimony here is consistent with his trial testimony, and therefore his recantation is not credible. And I was explaining to Judge Reinhardt that if we look at the record, if we look at the transcript of that colloquy, it's entitled to no presumption of correctness because it's not fairly supported by the record. And the evidence demonstrates by clearing convincing evidence that, in fact, when one listens to what Mr. Thomas actually said on the stand, he did, in fact, adhere to his recantation. Judge Krug said basically, if you tell me you lied at trial, I'm sending you to jail. So Mr. Thomas said, okay, I didn't lie at trial. But then when the lawyers went through the actual details of Mr. Thomas' testimony at trial, who had the gun, who punched you in the face, who waved the gun in front of Mr. Rosales, Mr. Thomas adhered to his recantation, which was that it was not Mr. Clark, which is what I said at trial. It was, in fact, one of the bikers that we were arguing with that night. Yeah, yeah, okay. I got it. Right. So that's why, Your Honors, that, you know, Judge Krug, at the end when he said, you know, he said, well, you saved yourself, sir, from a charge of perjury. And I find that, you know, whatever he testified to, you know, Mr. Thomas has told me today that he testified truthfully at trial and, therefore, that's credible. And I think the record reflects that that's not entitled to a presumption of correctness because, really, the judge came in with the predisposition to find the recantation false and the trial testimony true. And if one looks at the details of the colloquy at the hearing, when, you know, despite being threatened with jail, despite being threatened with having his, you know, his name removed from the record, Mr. Thomas stood firm. He said, it wasn't Mr. Clark. It wasn't Mr. Clark. It was one of the bikers. That's what I'm trying to tell you. And the judge displayed this kind of seemingly willful deafness to what Mr. Thomas was trying to say. And so for that reason, Your Honors, this finding that Judge Krug made, that the trial testimony was credible, is not entitled to a presumption of correctness. Play out for me the remedy that you're asking for because, you know, this is a case where there's no affirmative evidence that exonerates the defendant. But let's say that we agree with you that the recantation is sufficient to get past the gateway into a merits hearing. Are you asking that it be sent back to the district judge so that she can, if appropriate, conduct an evidentiary hearing? We're actually asking for remand for merits review. We think that Mr. Clark, our position is that Mr. Clark has made an adequate showing of innocence under Lee and under Schlupp. And therefore, the case ought to be sent back for the merits of his habeas petition to be considered by the judge. Your Honor says, you know, there's no strong affirmative proof of innocence. As Your Honor is aware, of course, one making an actual innocence claim under Schlupp and under Lee need not affirmatively prove innocence. Rather, the record has to reflect, considering all the evidence, that there is grave doubt about the actual conviction. And here there is. There was, speaking of no affirmative evidence, there was no affirmative evidence of Mr. Clark's guilt in this case. But presumably, if we do remand the matter, then there will be additional briefing. And if the district court thought it was appropriate, she can then conduct an evidentiary hearing, right? As I understand it, there was no evidentiary hearing conducted in this case because the defense never requested an evidentiary hearing. And this actual innocence issue didn't come up until objections to the report and recommendation filed by the magistrate judge was filed. So the record is really underdeveloped. Well, two things, Your Honor. First, the defense did request an evidentiary hearing in the district court. And that's at docket entry 12 in the district court. And that's when Mr. Clark was filing his opposition to the State's motion to dismiss the petition as late. He requested an evidentiary hearing on this. And going to the possible remedies, what date was that? The date, I apologize, Your Honor, I don't know. It's the 12th entry on the docket in district court. But I don't have the date in front of me. It would have been sometime probably in 2011 or 12. But I can certainly get that information to you. What you're asking is that we make the finding that he passes the schlup gateway in light of the new evidence, which would have been before the jury if all the evidence had been admitted. It would have been all of the witnesses' testimony. The first, what he said at the first trial, what his affidavit said, then what his final affidavit said. That would have been before the jury. And the question is, would the jury, if it had that evidence before him, would no reasonable juror have voted to convict? Finding that testimony, all of it together, would show guilt beyond a reasonable doubt. And assuming that we would evaluate all that evidence as meeting that test, then it would pass the schlup gateway. And then the court would take up the habeas case on the merits. And you're not asking to introduce any further evidence on that question of whether it passes the schlup gateway. But you are saying that there could be a merits hearing or would be a merits hearing on the habeas petition if we said it passed the gateway. Yes, Your Honor. If we pass through the gateway, then the remedy is for the petition's claims to be considered on the merits. But you're not asking to submit any further evidence to the district court on whether it should pass the gateway. Right. As far as you're concerned, that record is already before us. Yes. And just to clarify the question about the record here, the information that because Mr. Clark was pro se in the district court, he did not submit the actual declarations that Mr. Thomas had executed or the transcript of Mr. Thomas' testimony before Judge Krug, I proffered that information to this court when I filed the appeal, and I asked the court to take judicial notice of it, citing trigeros, unlike authority. Because the question here requires consideration of all the evidence, and because the standard of review is de novo, our position is that this court is in a position to make a finding as to whether Mr. Clark has made an adequate showing of innocence. Now, the court is, of course, free to remand for a hearing on this question in district court if the court feels that there's not an adequate showing made. But certainly our position is that, considering all the evidence here, we have made that showing. And that showing is essentially this. At trial, Mr. Thomas went on the stand and said it was Mr. Clark who did it. After trial, Mr. Thomas comes forward. He executes one declaration. He says, it wasn't Mr. Clark. I feel terrible that he's serving life in prison for a crime I know he didn't commit. It was someone else I was fighting with, and it was someone else who did this. He's then brought into court. And this is before the court. And he gives reasons to. Yes, he does, Your Honor. Because, you know, what his fears were and his wife and all that. Indeed, Your Honor, yes. He's then brought into court. And this makes this case unlikely. And there was as far as the trial was concerned, there was no eyewitness. No eyewitness to the actual shooting. That's what I'm saying. Yes. There was no witness of the hundred people in the parking lot that night. No one had anything to say. The bikers were gone, huh? I'm sorry? The bikers were gone. The hecklers were gone. Yeah. Everyone had dispersed. And the film didn't show. Right. All the film showed was that Mr. Clark was present in the liquor store, along with a hundred people who were also there that night. Detective DiTillo got up on the stand and he said, you know, I talked to those people who were there, and no one could corroborate the story that it was Mr. Clark. And so I'm really just relying on what Mr. Thomas has to say. Clarify the record for me. As I understand it, the shooting occurred the night before, in the evening. And then the very next morning, the witness identified Mr. Clark to the police from a photographic line-up, and a live line-up was conducted. Is it clear from the record why he would have lied at this time? Was there an allegation, or did anybody ask him when he was before the Superior Court judge, why he would have lied the morning right after the incident? Because I thought he wasn't re-arrested on his probation issues until much, much later. As to whether he was actually being arrested, the actual arrest came later when he was in Ohio, he was arrested and brought back to testify at trial in California. But what Mr. Thomas said was that, the police sat me down, they showed me the videotape of the liquor store. This was the morning after the incident? It was during the police interview. And now, Your Honor, I don't know when during the interview the tape was sh- Mr. Thomas' allegation was that, Mr. Thomas' allegation was that he sat down by the officer, showed him the videotape, said that's Mr. Clark, that's who did it, that's what you're going to testify to. Right, but what I'm saying to you is the morning after the shooting, he identifies this guy immediately, essentially. He picked him out of a photograph, then he picked him out of the lineup. Now, of course, later on, and I don't know whether it's later on, the record really isn't clear, he alleges that the police showed him the videotape and said, okay, here's the one, here's the shooter, this is what you're going to essentially testify to. Some coercion, essentially, was exerted on the witness to essentially maintain his identification of the defendant as the shooter. But I'm talking about the morning after. Was there an allegation by Mr. Thomas that he made that initial identification because of coercion of some kind? And if so, if you can direct me to a portion of the record that has that answer, that would be very helpful. And, Your Honor, I will review the record and direct, Your Honor, to a particular citation. I can't say right now if Mr. Thomas' submission was that right at the beginning of the interview when he sat down and showed him the videotape and said you're going to say this. Because that's my concern, right, because if the record isn't clear, then what you have is a witness who testified to one story and changed and changed again and changed again. So you've got statements by one witness going all over the place. And so it would seem to me that even if we accept the argument that his allegations may be sufficient to get past the schluck gateway, I would think the district court would be in a better position to assess this. There's only been one judge so far who's brought the witness in, looked at the witness in the eyes and said what happened here, and that's the superior court judge who made the factual findings regarding credibility. Nobody's done it. And this witness seems to have gone all over the place. No argument, Your Honor, with the fact that this case can be remanded for an evidentiary hearing on this question. No argument about it. But to clarify the record, Your Honor, this isn't a case of the witness going back and forth, back and forth, back and forth. At trial he says Mr. Clark did it. In his post-trial declaration, in his post-trial testimony, and in his second post-trial declaration, he consistently says it was not Mr. Clark. It was one of the bikers that we got into an argument with that night. This is not the State says Mr. Thomas is constantly shifting his testimony. He's not, Your Honor. He's consistently affirming the fact that what he said on the stand was false. Everything, his entire testimony was true but for one detail. Yes, there was a fight that night. Yes, he was punched. Yes, someone waved a gun at the victim. But the one critical detail which was false was that that person was Mr. Clark. Mr. Thomas consistently affirmed under expressed threat of imprisonment and prosecution that in fact he had testified falsely against Mr. Clark and that he was someone else. So I just want to clarify the record. This is not a hemming and hawing, back and forth, yes, no, yes, no. I think you raise a fair point. I was thinking more of what happened during the testimony before the Superior Court. And I think that this witness told the truth at trial. Now, I understand your point that maybe that shouldn't have a presumption of correctness or truthfulness. But I'm still concerned as to the record because the judge whose factual findings you're asking us to reject is really the only one who's had the opportunity to assess the witness's credibility. Indeed. And to address that topic of his testimony in front of Judge Krug, you know, the state calls it, you know, equivocation. He equivocated. Well, you know, as we explained in our brief, what reasonable person would not equivocate? You're brought in and the judge begins the hearing by saying, okay, you signed this declaration saying that you testified falsely at trial. If you stand by that declaration, I'm sending you to jail. Now, if you don't stand by that, you'll still be in unspecified trouble, but the result will be different. Meaning you won't be jailed and imprisoned. So when he says, you know, if you tell me you lied at trial, you're going to jail, Mr. Thomas says, okay, I didn't lie at trial. But, again, when we look at the record, the details, the things that matter, who had the gun, who punched you, who waved a gun in front of the victim, Mr. Thomas consistently says it was not Mr. Clark. It was the spiker that we were fighting with. But I agree with Your Honor. It's true that only Judge Krug had brought in Mr. Thomas. And the Court is certainly free to remand for an evidentiary hearing. But our position is that on this record, that's unnecessary, because we've made the showing required under Lee and under Schull that there is sufficient doubt about the conviction here, because basically the conviction is based on one man's testimony. Nothing corroborates it. Literally nothing. There was forensics here that didn't match Mr. Clark. There were bloody shoe prints by the victim. There were fingerprints on the victim's car. They were analyzed, and they were found to not match Mr. Clark. That was the forensic evidence. No other of the hundred people there that night corroborated what Mr. Thomas said. This was a one-eyewitness case corroborated by literally nothing. And the witness then comes into court and under express threat of imprisonment from a judge nonetheless stands by it. He wasn't an eyewitness, was he, Thomas, to the shooting? Not to the shooting. Not to the trigger. He was an eyewitness. To the events that night, Your Honor. Excuse me. No one witnessed the trigger being pulled. But he then comes into court and says, despite being threatened with imprisonment, I feel terrible because I know this person is serving life in prison for a crime he didn't commit. So our position, Your Honors, is that we've made an adequate showing to remand for merits review on the petition. The Court is free to remand for an evidentiary hearing, but our position is that we've already made that showing. I can address the statutory tolling question, if Your Honors would like, or I can reserve what my balance for the rebuttal. Well, you know, we set times for these things, but these are important cases. So why don't you take the rest of your time for you to make your second argument, and I would hope that then our presiding judge will give you a chance for rebuttal anyway afterwards. Certainly, Judge. Statutory tolling. This question turns on the petition that Mr. Clark filed in California Superior Court in February 2008. If that petition was properly filed under California law, then Mr. Clark's habeas petition was timely filed in the district court. Now, the Court expanded the certificate of appealability on this issue and ordered additional briefing, and the parties submitted those additional briefs. And as we set out, this Mr. Clark really has three points to make about this. First, the State has waived any argument. Have you got a chart on this? A chart, Your Honor? Yeah. For right now? Yeah. I don't. I'm sorry. Did you ever make one up? I did not. But the parties focus in this February 2008 petition. The first point is that the State has waived any claim that this was filed late. All right? When Mr. Clark filed his petition in February 2008 in the State court, the State court ordered the State to respond to the petition. The State came in. It filed a 30-page letter brief. It never argued that the petition was filed late. Under California law, the State therefore waived any claim that the petition was filed late. And we cite the Moser case for that proposition. We then argue, based on Wood, that the State should not be heard to argue in this court. You know, I've got all these dates here, but I, you know, you don't, you don't know. February 9th, 2005, San Bernardino jury convicts Clark of second-degree murder. May be. 3-14-2005, court sentences him 55 years to life. And then in May 2005, Clark's wife executes a declaration that Thomas recanted his testimony to her. It goes on, you know, date by date by date. Yeah, I think this, my suggestion was not a good one. It's really very difficult to go through this kind of statutory or equitable controlling argument briefly to follow all the dates. I think it's pretty well laid out in the briefs, and we will really have to study that legal question separately, unless somebody's got a specific question, for you to go through the whole history of the various habeas petitions in the California courts, actions or inactions. Is that something we can really handle in this kind of an oral argument? Well, I can, you know, I think I got a pretty accurate record of what was filed and what dates and all that. I'm happy to give you a copy of this date as well. Did you work one out?  I don't have a chart, Your Honor, but I do have the same dates. Judge Franz says you should always have a good chart. Yesterday, we had a fourth test, but fortunately, we don't have that chart today. I know. But you've laid out the relevant dates in the briefs, so we have that. It stirs you a little bit, you know. Certainly, Judge. Yes, I briefed the dates both sides have. I have my own notes, Your Honor. I thought when you asked me about a chart, you meant something for the court to look at. But I certainly have my own dates, just as Your Honor was reading. Oh, okay. I'll give you a copy. You can check mine. Okay. Thank you. Thank you. Let me ask you, when does the time start? The one you're calling. In the state court system, you get convicted. Now, if you want to find what I think they call it, coram nobis, what they call it. It's what they call it. State habeas. Habeas corpus. They may have also coram nobis petitions. Whatever it was. So you can go right to the Supreme Court and file it. You go from the Superior Court to the Supreme Court. And then you can go back to the Superior Court. Then you go to the Court of Appeals. Right? And then if you're not happy, you can try another Court of Appeals. And then you can try the Supreme Court, and they send you another postcard. But you keep trying. Now, when is that period, the period of your story? Here, Mr. Clark had one round of collateral review. And our position is that that began when he filed. He didn't go straight up, did he? Initially, actually, he filed something in the Court of Appeal, and they rejected it without prejudice. They said, you have to go file in the Superior Court, start at the bottom. So he then went into the Superior Court. You don't have to do that. Well, in practice, you do, I think, as this case reflects. Yeah, all right. So then they sent him back to the Superior Court. Then where does he go? So then that's where he had that hearing in front of Judge Krug, where Mr. Thomas came in. You told him, you know, you keep this up, you're going to prison. Right. And so the judge said, okay, after hearing you today, I'm going to throw out your recantation and stand by the trial testimony. So then what Mr. Clark did is he went to Ohio, his wife did, and got Mr. Thomas to sign another declaration explaining that what Judge Krug thought had happened or said had happened, in fact, did not happen. The truth was that he had not withdrawn his recantation. He stood by it. He stood by the fact that Mr. Clark was not the assailant, and in fact it was one of the bikers that he was fighting with that night. So he filed that petition in February 2008 in the State Superior Court in front of a different judge. The judge said, I want to hear from the State. The State came in. They filed their opposition, never said it was late. Well, it's a different judge because the file stays in the courtroom. It doesn't follow the judge. In truth, I don't know why it was a different judge. I don't know if that was something ---- That's because that's the system. You know, it's not the judge that's important. It's the courtroom. So the files stay in the courtroom. Here, the file follows the judge, you know, as long as he's around. So that's why you get different judges, because they go back to whatever the department is, 119, whatever it was. Okay, so now he's back again. Right, and so he filed that petition in February 2008, and that's the petition that sort of decides the statutory tolling question here. If that was filed properly under California law, then the federal petition was filed on time under the doctrine of statutory tolling. And our position is that it was filed properly under California state law, and the state disagrees with us. But we've explained why in our briefing and in our supplemental briefing that was a properly filed petitioning under California law. And because it was proper under California law, that ends the inquiry here. Because when federal courts look to tolling and time issues, they look to the law of the state. And so our position is that it was properly filed under state law, and that ends the inquiry. And that's why it's timely under the doctrine of statutory tolling. All right. Thank you. May it please the Court, Ronald Jacob, Deputy Attorney General for Respondent Appellee. I would like to just briefly address the tolling issue. It's one of the most difficult issues, which can be easily resolved. Mr. Clark waited 11-1⁄2 months since the denial of his last state petition until he filed his federal petition. Completely unexplained. That leaves 17 days of the one-year statute of limitations. There was a four-month hiatus between the denial of the second Superior Court petition in May of 2008 and when he filed his next petition in the Court of Appeal in September of 2008. Again, no explanation whatsoever. Right there, the statute of limitations has been exceeded without even having to go to the Superior Court proceedings. In terms of the waiver, Wood v. Where does the statute start? The statute started at the denial of the first Superior Court habeas petition in January of 07, because that was filed before the California Supreme Court denied review of his appeal. That's in the San Bernardino Court. Yes, San Bernardino Superior Court. And although we don't even need to get to the Superior Court proceedings for purposes of statute of limitations, I would just like to briefly comment on Appellant's waiver argument, that Wood v. Milliard actually shows there was no waiver, because in that case, Justice Ginsburg was very clear to articulate that that case only would find, that they were only finding waiver when there was an intentional relinquishment of the statute of limitations argument in federal court. Otherwise, citing Day v. McDonough, federal courts are free to consider statute of limitation arguments on timeliness arguments, because the purpose of the statute of limitations goes beyond the interests of the parties. So there's no waiver. Moving on to the actual innocence claim, of course, as we've cited in our brief, it's a demanding standard, and this Court has also recognized that's a very narrow exception. And it can't It's a narrow standard, but the district court used the wrong standard. It used an, if I can find its opinion here, and at the final point, it applied not the SHLUP standard, but the actual innocence standard. Well, my reading of it, Your Honor, was that the Court cited SHLUP and was applying SHLUP. That it was aware of SHLUP and applying SHLUP. Well, what did it say the standard was? I think it's .5. It says, Accordingly, Petitioner fails to come close to making the extraordinarily high, in quote, showing required to establish a freestanding claim of actual innocence. But that's not the SHLUP standard. That is true. This is not a freestanding claim of actual innocence. However, this Court reviews this. De novo. De novo. Actually, there is some disagreement within the circuit, as evident in Stewart v. Kate, where this Court just recently republished it after denial of rehearing. But assuming this Court does review it de novo, it just, the declaration in this case does not meet the SHLUP standard. And let me explain why. Before you do, let me ask you one question that Judge Wynn asked about. Could we review, could we revamp this, assuming a lot of other things, to the district court for an evidentiary hearing on this question, this preliminary question, not the merits question? But could we review it to the district court for an evidentiary hearing on the gateway question? Certainly, this Court could, but we would argue that it should not. A similar argument was raised in Stewart v. Kate, where the Petitioner said the district court did not make its own credibility findings, and yet this Court found that the district court still did not abuse its discretion in denying an evidentiary hearing based on the weaknesses in the case. And that's what I'd like to go to now. What if we accept counsel's argument that what the superior court judge did was to exert coercion on the witness who was trying to recant, and we set aside that finding? Then with this record, where should we go from here? Well, to look at the facts of the case, Your Honor, that the physical evidence thoroughly corroborates Mr. Thomas' trial testimony and undermines his ever-changing recantation. First of all, in Mr. Thomas' second — Are you answering the question that was asked to you? Yes. I believe Judge Wynn was asking if we set aside the superior court's findings, is there anything else to look at? You're saying conducted an overview of the evidence that's been presented so far, and under that overview, your position would be that that's still not sufficient to satisfy the Schlupp standard. Exactly, Your Honor. So you're about to go through the corroborating evidence, but the problem is that there's no dispute, that's reasonable anyway, that Mr. Thomas was the key witness, right? Because the physical evidence really doesn't corroborate who the shooter was. The question is, who was the shooter? And on that, what evidence did you have? Okay. Well, first of all, as Your Honor's question pointed out earlier, there is absolutely no evidence of any motive for Mr. Thomas to lie in his initial identification of Mr. Clark. All the declarations say is that he was coerced at trial to give the same testimony consistent with his earlier identification. But there's never been any allegation of any coercion or misconduct during the initial identification. Yet there's plenty of evidence showing why Mr. Thomas is now afraid of Mr. Clark. He left the scene, this is shown in the facts, right after the shooting. He shot his best friend and was afraid of Mr. Clark, and that's why he fled. In terms of the ---- Who shot whose best friend? Mr. Clark shot Mr. Thomas's best friend, Mr. Rosales. Oh. You know that. Well, that's assuming ---- By the trial testimony that is well corroborated by the physical evidence I'd like to get into. Well, the evidence that shows that he shot his best friend is his evidence. Well, but ---- It isn't true. But we have to look at the trial testimony versus the recantation. The trial testimony is completely corroborated by the physical evidence. Mr. Clark says that his friend was shot with a 9-millimeter weapon. There was an expended casing at the scene which showed that, yes, a semiautomatic weapon was used. In Mr. Thomas's second ---- 9-millimeter casing. Yes, 9-millimeter. Yes, sure. In Mr. Thomas's second declaration, he's very clear that, oh, he saw the biker's weapon. It was a revolver which does not eject the casing. In fact, he talks about how the revolver had a 6-inch ---- Let me have you stay, if my colleagues will indulge me for a moment, on the evidence that you say, the physical evidence that you say corroborates the testimony that Mr. Clark was the shooter. You have the video showing that Mr. Clark was at the scene. You have consistent testimony that there was a car. His car was bumped, but no visible damage, not extensive damage. But even Mr. Thomas had consistently testified at trial, and in his subsequent declaration, he never saw anybody pull the trigger. So it's essentially a chain of inferences that Mr. Clark must have been the shooter. You have the 9-millimeter casing, but you also have the fact that Mr. Clark was never arrested with a 9-millimeter handgun. So I don't see how that's corroboration that Mr. Clark was the shooter. Your Honor, that is not what I'm arguing. The ---- Let me ask you this. I just ---- Now, this happened, what, about 3 in the morning? Very early morning hours or late evening. And the police were there on the scene? Shortly thereafter, yes.  Did they interview anyone at the scene? Well, apparently not. Apparently everyone fled after the shooting. They had hundreds of people there before. That's what we've learned. Yes. Okay. Now, when did they go over to Mr. Clark's house? Well, they went to Mr. Rosales' house to talk to his widow later that morning. Later that morning. And Mr. Thomas was across the street. Mr. Thomas was across the street. When did they go to Thomas? Right then and there. They called him over and said they'd like to talk to him. Now, if Thomas was the shooter and it was very close range, right by the guy when he shot him. Well, there's no allegation that Thomas ---- Now, if Thomas was the shooter, they had clothes on. Did they ever check him for powder residue? No, there was no G.S.R. or any. What did you say? There was no gunshot residue analysis, G.S.R. Well, did they check him? Did they get his clothing? No, because there was never any allegation that Thomas was the shooter. But they had a chance when they talked to Thomas. True. Yeah. Who said he was the shooter later on. No, later on he said the biker was. It was the biker, yeah. I'm sorry. I'm sorry. It was the biker. Now, we know who the biker was. In the second declaration, certainly we know. We know who the biker was. Has that biker been interrogated? I don't even know if he exists, Your Honor. So, no. I don't know. Well, did they try to find him? This declaration, this biker story came up just a few years ago. So, the police didn't have the benefit of these declarations. Well, it was a biker hangout, wasn't it? Apparently, yes, Your Honor. If I could briefly repeat. It was not a single person. Did they interview the people that were running this, the bar? No. No one at the liquor store was interviewed. Or the bar. Or the bar. No, Your Honor. The bar was right adjacent. They're all together. Yes, Your Honor. I believe so. One very simple building. If I could briefly return to Judge Wynn's question, because I think this is vitally important. I'm not arguing that the physical evidence corroborated the identification of Mr. Clark as the shooter. I'm saying the physical evidence corroborated the trial testimony of Mr. Clark versus the declaration. And that's what we have to look at. What's more believable, the trial testimony or declaration? The trial testimony is corroborated in that there was an ejected round, obviously not from a revolver. There was, contrary to what's stated in the reply brief, there was collision damage in the passenger side door of Mr. Clark's vehicle, which again corroborates the trial testimony that that's what the argument was about. There are Mr. Rosales' insurance papers on the ground. Again, corroborates the trial testimony and undermines the recantation, which is that this was all about bikers wanting to buy a used floor buffer. So based on that, this court can, taking de novo review, can find that this is not one of those cases that falls within the narrow class of cases meeting the demanding schlup standard. And therefore, we would request that the – respectfully request that the court affirm the judgment dismissing the petition with prejudice. Can I ask you a question? At what point in the Federal proceedings was Mr. Clark represented by counsel? In the Federal proceedings, not until the objections to the R&R. And that's where counsel was – notified the court that he was assisting appellant in proprio persona, but not until the objections. And that's when this actual innocence issue came up for the first time in the briefing? Yes, Your Honor. Hello? Unless there are any further questions, we're prepared to submit. Your Honors, just on this point of corroboration, my colleague says I'm not arguing that the evidence corroborated Mr. Clark being the shooter. Well, then what are we arguing about?  The fact that it's not the case that the evidence corroborated Mr. Clark being the shooter. It's not the fact that the evidence corroborated Mr. Clark being the shooter. Who should be in jail for life for killing Mr. Rivales? I understand his argument. He's saying that the trial testimony of the witness is internally consistent when you look at the other facts. Right. Undisputed. But when you look at the subsequent declarations, it's not as internally consistent. So one of the inconsistencies he pointed out was the biker having a revolver versus the 9-millimeter, which we know was the weapon used. Do you want to address that point? Yes, Your Honor. Aren't the subsequent declarations equally internally consistent when you look at other undisputed evidence in the case? What my colleague omitted to mention was that in Mr. Thomas' first declaration, he says the biker had a 9-millimeter weapon and was walking around Mr. Rosales with it. Now, it's true that in his second declaration, which came later, he says it's a revolver. And, yes, that's an internal inconsistency, just as there were several internal inconsistencies in Mr. Thomas' trial testimony, which were brought out by cross-examination. Overall, Mr. Thomas, both at trial and after trial, gave a largely consistent story. He went to the biker bar. He was with his friends. They were trying to sell this buffer. They got into a fight. Someone comes out. Someone punches him and waves a gun in front of Mr. Rosales. A shot rings out, and Mr. Rosales is dead. The question is, who is the killer? At trial, Mr. Thomas said it was indicated he said he never saw the trigger man, but then the detective got on the stand and said, yes, he identified Mr. Clark as being the shooter, even though he never identified anyone as being the shooter because he never saw the trigger pulled. But clearly the inferences from his testimony at trial was that it was Mr. Clark who was the culprit. But his testimony after trial differed in one key, and really the only respect that matters here, which is the identity of the culprit, and that was that it was not Mr. Clark. It was one of the bikers that they got into a fight with about selling this buffer, and they took issue with the fact that Mr. Thomas was with someone who was Latino, and they started making threats and improper comments, and then a fist fight breaks out, and then suddenly a gun is fired. So that's essentially what happened that night in this melee of 100 people outside of a biker club on a Saturday night in San Bernardino. The question is, who's the culprit? And I think as Your Honor was asking my colleague to address, no evidence corroborated the accusation that the culprit was Mr. Clark. The only evidence indicating that he was the culprit was the testimony of Mr. Thomas. And Mr. Thomas then came into court and testified three times under oath, under cross-examination from a prosecutor, and under an express threat of imprisonment from a judge that, in fact, yes, he had given false testimony at trial. His story was largely consistent but for the only detail that mattered, which was the identity of the culprit. And he says, it was not Mr. Clark, and I see him now serving life in prison for a crime I know he did not commit because it was not he who was fighting with us that night but a biker. And so I want to come in and I want to make amends and right this wrong. And Judge Krug, as the record reflects, didn't want to hear anything about it. He said, you're just trying to worm out of your testimony at trial. And if you tell me that you lied at trial, you're going to prison. That's not what a judge should do. Right? So there's no presumption of correctness as to that credibility finding. The record reflects here all the evidence that we've proffered reflects that Mr. Clark has made an adequate showing of innocence under Lee, under Schult to get his habeas petition considered on the merits. That's what we would like the Court to do. Is there any evidence at all as to why he identified Mr. Clark when the police first interrogated him outside Mr. Rosales' house? He knew Mr. Clark from the neighborhood. He was known as Scat. And there's evidence, and I'm going to put a letter into the Court to try to nail this down as to exactly what the evidence shows when he said what he said. But he knew Mr. Clark from the neighborhood. And there was evidence that, one, he felt pressured from the police to identify Mr. Clark as the culprit. Two, that he was scared to tell the truth about his story, that he had stolen this floor buffer with Mr. Rosales and were trying to hawk it for some money to buy beer or whatever else. And he was afraid of getting into trouble. He knew he had a probation violation hanging over him, and he was afraid. This is a man who has rebuilt his life from substance abuse from crime, and he was in a position where the police were in a position to take away that freedom. Is there any evidence as to how he happened to and what he said when he identified him to the police the first time? I mean, right at the scene? Not at the scene of the crime. I mean, where he was walking by? Right. They saw him on the street, and they recognized him from watching the videotapes from the prior night, since they went over and they talked to him. And that's the answer I have to give the court, which is exactly when did he make the accusation that it had been Mr. Clark, and what evidence is there that that accusation was false? And that's what I need to get the court in a letter today, because I know that the evidence exists, but I cannot tell you here exactly when that happened. And that was my first question to you, because I'm concerned as to the state of the record. It seems a bit muddled to me, because the detective testified at the trial that he, Mr. Clark, had identified Mr. Thomas had identified Mr. Clark as the shooter because he knew him from the neighborhood and his nickname was Scat. And based on that information, the detective went out and put together a photo lineup, showed it to Mr. Thomas, he identified Mr. Clark. Then in a live lineup, he identified Mr. Clark again. And obviously during the trial, there was no admission that there was any coercion on the police's part. And I think, in fact, if I recall correctly, on cross-examination of Mr. Thomas, he specifically denied that the police had exerted any pressure on him. And then subsequent to that, we have the testimony before Judge Krug, but we also have two declarations, and it wasn't clear from the declarations to whether the coercion really occurred at this meeting or whether it was subsequent when he was coming back from, I think it was Ohio, getting ready for trial. It's a very muddled record from what I could see of it. And so I was hoping that you'd be able to clarify that for us. And we acknowledge in the briefing that the reasons that he gave over the course of this litigation for why he falsely accused Mr. Clark may have differed. But our position is that the key point is that he has consistently said that his accusation against Mr. Clark was indeed false. When Your Honor says, you know, he put a photo lineup in front of him and then a live lineup and he identifies it, and the State tries to, you know, his — Well, I know that. But the reason why it matters is that if Mr. Thomas identified Mr. Clark as the shooter or basically placed him in a position where the inference is his shooter, if I identified him before any coercion was exerted upon him, there's no explanation for that. Right. Yes. And so we have to look at that, the fact that he identified him before there was any motivation to make a false identification. Yes. You do have to. In determining whether the Schlepp standard's been met. And that's what I propose to put before the Court as soon as I can. But I think the overriding point here is that given Mr. Thomas's life history, he's not — and as trial reflected as well, there's many inconsistencies there. He was not an ideal witness by any account, but one has to take the witnesses as they come to one. And here, what Mr. Thomas said was, yes, I initially identified Mr. Clark, but that identification was false because it wasn't he we were fighting with. It was this biker. And I appreciate Your Honor's point, and that's why I want to try to nail this down for the Court. But the ultimate bottom line here is that what we have is a man serving life in prison based on one person's testimony. And that one person has come forward at great risk to himself and his livelihood and said, I lied at trial. I perjured myself. It's not this person. It's someone else. And this is a man wrongly convicted. And unless the Court has other questions, I will submit on the briefs. And how soon do you expect you would submit a letter advising us what the record shows about the facts that Judge Wynn's been inquiring about? As soon as I get back to the office, I'm going to try to nail this down. And so I hope it would be today or, if not, by tomorrow. All right. Thank you, counsel. Thank you. The government, the State wishes to respond, of course. Yes, please. What did you say? When we're through tomorrow? No, I'm talking about the letter. Oh, okay. Yeah. The government is to file a response to the letter if it wishes? Yes. Yeah. You do that within five days of when you get it? Yes. That would be fine, Your Honor. Thank you. All right. All right. This matter is submitted, and the Court will stand at recess.
judges: Pregerson, Reinhardt, Nguyen